PROVINCE *v.* BUILDING & LOAN ASSOCIATION.

(*Jackson.* April 25, 1900.)

BUILDING AND LOAN ASSOCIATIONS. *Contract of, to mature stock within limited period ultra vires and void.*

The contract of a building and loan association with its borrowing stockholder to mature his stock and discharge his debt and mortgage, after he has made a stipulated number of monthly payments—*e. g.*, eighty-four—is *ultra vires* and void, and will not protect him or his vendee against foreclosure of his mortgage, although he may make the stipulated payments, if a greater number—*e. g.*, ninety-eight—is, in fact, required to mature his stock and pay his debt, and he defaults in making any of the additional payments.

FROM CARROLL.

Appeal from Chancery Court of Carroll County. A. G. HAWKINS, Ch.

HAWKINS & MURPHRY for Complainants.

M. L. McKENZIE, J. T. PEELER and McCALL & McCALL *contra.*

BEARD, J. The defendant, Interstate Building & Loan Association, is a corporation organized under the laws of the State of Georgia, and with its prin-

cipal situs there. On the 18th day of April, 1900, the defendant, S. A. Mebane, being the owner of a number of shares of stock in this association, obtained an advance or loan from it, and pledged as security his certificates of stock and also gave a deed of trust upon a piece of real estate in the town of Huntingdon. The shares of stock thus pledged were of the par value each of $200, and by the terms of his written contract this borrower was to pay to the association monthly installments of interest and dues, until these payments added to his proportionate part of general profits earned, should mature this stock. When this was done, then his obligation was discharged and the trust deed was to be released.

In 1893, having made the required payments up to that time, Mebane sold and conveyed the real estate to one Province, subject to this trust deed. At the same time he represented that the agreement between himself and the association was that the stock in the certificates, of which he also assigned his interest to this purchaser, would become matured in eighty-four months from the date of the loan. Relying on this assurance, but demanding no obligation to make it good, Mebane executed and delivered to Province a paper writing, in which he undertook that if this stock did "not mature in thirty months after the 10th

of August, 1893," he would agree to meet and discharge thereafter the monthly installments until the stock did mature.

Province and his representatives from that time forward paid the installments as they accrued under the original contract, until the full time of eighty-four months had passed, when a cancellation of the trust deed was demanded of the association and refused by it, for the reason that it would take fourteen more monthly installments of dues and interest, even if met promptly, or ninety-eight in all, to mature this stock.

The parties refusing to make any additional payments, the association caused an advertisement to be made of a foreclosure sale of the property covered by the trust deed. The vendee, Province, having in the meantime died, the bill was filed by his representatives.

The bill makes as parties defendant the association, the trustee in the deed of trust, Mebane, the vendor of Province, and the surety in the obligation which he executed to Province. It avers in terms what has heretofore been set out. It alleges that notwithstanding the agreement that the stock should mature in eighty-four monthly payments, all of which had been made, yet the association was claiming a large balance, and seeking to enforce its payment by a sale of the property. It was asked that this sale might be

enjoined until it could be determined whether anything was due on this loan. The Mebanes were made parties in order that complainants might recover from them any excess of liability to the association, if any was found to exist, over and above that accruing during the term of eighty-four months.

The record shows that payments for that number of months did not mature this stock, but that it required payments for ninety-eight months, not only to bring it to a par value, but also the stock of all other members of this association belonging to the same class.

The testimony as to the agreement upon which the present contention of complainants is made, was incompetent under at least two well-settled rules of evidence, yet as it was not objected to in the Court below, we will take it as established that notwithstanding the written contract, yet when Mebane subscribed for stock and made his loan, the officers of the association agreed with him that it should be matured within the period claimed. Can this agreement avail him or the complainants on this record?

The theory on which associations like the present are organized, and the rule of law as applied to them by all the cases, is that they are mutual in their character, and the members share in the common gains and losses. The associa-

tion has no members save its shareholders, and
no capital with which it can serve the purpose
of its creation, except as it accumulates it from
payments of monthly dues on its stock by all
its members alike, and of interest due from its
borrowing members. By the law of its being, it
is bound to treat all stockholders alike. So any
contract by which it should undertake to give
one of its members a greater share of profits
than another, or to relieve him preferentially from
the full discharge of his obligation to the asso-
ciation by the payment of a part, would be viola-
tive of this principle of mutuality. So in *Bertche*
v. *Equitable Loan & Investment Association,* 48
S. W. R., 954, where an association had agreed
with certain borrowing stockholders that the deeds
of trust executed by them should be released and
their liability be discharged on their payment of
dues and interest for a term of one hundred
months, this agreement appearing in the face of
the instrument, and the board of directors adopted
a resolution directing the president to execute
the release after that term, but when their shares
of stock were still unpaid, the Supreme Court of
Missouri held, at the instance of another stock-
holder, who filed his bill to restrain the release,
that this agreement was in contravention of the
powers of the association and subversive of the
letter and spirit of the legislative scheme devised
by their organization.

In *Schell* v. *Equitable Loan & Investment Association,* 51 S. W. R., 406, the same Court, reaffirming the principle announced in the foregoing, held that a building and loan association has no power to contract that shares of its stock shall reach a par value within a fixed time, as such an agreement would tend to give one shareholder an advantage over others of its members. In *King* v. *Union,* 170 Ill., 135, the Court held that a building and loan association, organized and based on the mutual plan, requiring subscription to its capital stock to be made in periodical payments, which should continue until the payments, together with its earnings, should equal the full face value of the shares, has no authority to issue a certificate of stock wherein it agrees to pay the subscriber the full face value of each share at the end of six years. To the same effect is *Baltimore Building & Loan Association* v. *Powhattan Imp. Co.* (Maryland), 39 Atl. R., 274, and the case of *Miller* v. *Eastern Building & Loan Association,* recently determined by the Court of Chancery Appeals and affirmed by this Court. The opinion in this last case is found in 53 S. W. R., 231.

Upon sound policy, as well as the authority of these and other cases which might be referred to, that conceding all that is claimed as to the agreement in question, we hold that it was *ultra vires,*

and it was the right and duty of the association to enforce payments on these shares of stock until they reached a par value, and, on a proper default, to foreclose its trust deed.

The bill will be dismissed so far as the Interstate Building & Loan Association is concerned, but the cause will be remanded to the Chancery Court in order that the liability of the defendant, Mebane, in this contract to Province, may be ascertained and proper decrees be entered with regard thereto. The costs of this Court and of the Court below will be paid by S. A. Mebane.