**Hugh H. JENKINS, et al., Plaintiffs-Appellants,**

v.

**Don C. MALONE, et ux., et al., and Clyde A. Bowman and Wanda C. Bowman, Counter-Plaintiffs-Appellees,**

v.

**Oscar N. JENKINS, Sr., et al., Counter-Defendants-Appellants.**

Supreme Court of Tennessee, at Knoxville.

Aug. 12, 1985.

Gene P. Gaby, Greeneville, for plaintiffs-appellants.

Roger A. Woolsey, C. Berkeley Bell, Jr., Greeneville, for counter-defendants-appellants.

## OPINION

BROCK, Justice.

The petitioners are beneficiaries under a deed of trust and have brought this action against the defendants Bowman who were grantors and obligors under the deed of trust and against the defendants Malone who, plaintiffs allege, have acquired the property which is the subject of the deed of trust from the Bowmans in violation of a stipulation in the original deed of trust to the plaintiffs that the property was not to be "sold" by the Bowmans without the written consent of the plaintiffs and that if a sale, without permission, should occur the due date of the whole debt secured by the deed of trust could be accelerated, at the option of the plaintiffs. The complaint sought a declaratory judgment that the mortgage debt had been accelerated and that plaintiffs were entitled to immediate foreclosure. The Chancellor adjudged the issues in favor of the plaintiff but upon appeal the Court of Appeals reversed and dismissed the complaint.

The pertinent facts are undisputed. Mr. Oscar Jenkins, Sr., maintained his residence on real estate situated on State Highway No. 93, near Greeneville, Greene County, Tennessee. He sought to befriend Mr. Clyde Allen Bowman, now deceased, by arranging the sale to him and his wife of some property adjoining Mr. Jenkins' residence on Highway 93. Mr. Jenkins had been the owner of this property but some time prior to the time in question had transferred the ownership to the "Jenkins trust" and to his son, Hugh H. Jenkins. Although the property had a fair market value of approximately $75,000.00 to $80,000.00, Mr. Jenkins arranged to sell it to the Bowmans for $55,000.00. It was agreed that the Bowmans would pay $10,000.00 down and pay the balance over a period of 18 years, in effect, interest free since the agreement of sale provided that of the purchase price of $55,000.00, $45,000.00 would be considered as principal and $9,200.00 interest, payable over the term of the obligation. As security for their debt, the Bowmans gave a deed of trust to plaintiffs which contained a provision that:

"In case any one or more of the grantors of this deed of trust should desire to sell its interest in any of the real estate herein described subject to this deed of trust, the grantor agrees that it shall not sell

nor convey same unless the owner or holder of the debt(s) herein secured shall first agree to such sale in writing; and in case such a sale of said real estate is made without the written consent of the owner or holder, the entire debt or debts and all other obligations herein secured shall become immediately in default...."

Approximately one year later the defendant Bowman, pursuant to a package of documents presently to be discussed, transferred possession of the subject property to the defendants Malone who erected a junk yard thereon. The package mentioned included an "Option," an "Addendum to option" and a "Payment schedule."

The "Option" provides, in part, that in consideration of the sum of $10,000.00 cash in hand paid and other good and valuable consideration, the Bowmans granted an option to purchase the real estate in question to the Malones. This "Option" was acknowledged for recording and it referred to a second document, an "Addendum to option" that was not acknowledged for recording. This "Addendum to option" refers to a third document, the "Payment schedule." The documents provide that the purchase price of the property is $70,-000.00, $10,000.00 of which was paid upon the execution of the documents and as further consideration, Malone was required to pay $527.97 per month a portion of which was to be applied to the purchase price of the property. The portion of these payments to be applied toward the purchase price is ascertained by reference to the "Payment schedule" which provides a schedule for the payment of the principal balance of $60,000.00 in monthly payments over a period of 216 months, or 18 years, and 8% interest per annum on the unpaid balances. When all of these payments are made the purchase price is paid in full. Mr. Malone testified that as the arrangement was explained to him, a deed would be given to him when he met all of the payments on the payment schedule.

In his testimony, Mr. Don Malone referred to the $10,000.00 payment as "the down payment" and referred to the payment schedule as "the payment book" and referred to his monthly payments as going "right on down until it is paid off."

We consider this testimony to be substantial evidence that Mr. Malone considered the transaction between him and the Bowmans as a contract of conditional sale rather than an option. Moreover, Mr. Grady Carter, a realtor who assisted in this transaction, testified that his firm charged the Bowmans $7,000.00 or 10% of the purchase price of $70,000.00 for handling this transaction. This happens to be the customary charge made by his office for handling the sale of such properties. We note, however, that he insisted that his office made the same charge for "putting options together."

Considering all of these documents and the testimony, Chancellor Inman summarized his holding as follows:

"The alienation of this property by means of the purported 'option' is a violation of the restraint provisions of the deed of trust, whether it is characterized as a sale or otherwise. I think, in any event, that the sophisticated document is a sales contract, albeit the limited liability, *prima facie* of the obligees."

We concur in these findings and conclusions of the learned Chancellor.

■ Considering the "Option," the "Addendum to options" and the "Payment schedule" together, as we must since they were executed at the same time between the same parties and with respect to a single transaction, and considering the amount of money paid and agreed to be paid by the Malones to the Bowmans and considering that a deed was to be executed by the Bowmans to the Malones at the end of the 18 years of scheduled payments and that the Malones were placed in possession of the property, we conclude that the transaction between the Bowmans and the Malones was in reality a contract of sale which, in equity, amounts to a transfer of ownership even though no deed has been executed. *Campbell v. Miller*, Tenn.App., 562 S.W.2d 827 (1977); *Bates v. Dennis*, 30

Tenn.App. 94, 203 S.W.2d 928 (1947). *See, also: Erswell v. Ford,* 211 Ala. 242, 100 So. 96 (1924); *Vance v. Roberts,* 96 Fla. 379, 118 So. 205 (1928); *Wolfle v. Daugherty,* 103 Fla. 432, 137 So. 717 (1931); *Gompert v. Frost,* Iowa, 177 N.W. 71 (1920). The obvious purpose and object sought to be achieved by the restraint provision must be carried out. We conclude, therefore, that a "sale" has occurred within the meaning of the acceleration clause here at issue and that the sale accelerated the debt for which the deed of trust was given. *Gunther v. White,* Tenn., 489 S.W.2d 529 (1973).

Accordingly, the decree of the Court of Appeals is reversed and that of the Chancellor is affirmed and this cause is remanded to the Chancery Court for such further proceedings as may be appropriate. Costs incurred upon appeal are taxed against the defendants-appellees.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.