IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 20, 2013 Session

**WILLOWMET HOMEOWNERS ASSOCIATION, INC.
v. CITY OF BRENTWOOD, TENNESSEE**

**Appeal from the Circuit Court for Williamson County
No. 2011337      Timothy L. Easter, Judge**

**No. M2012-01315-COA-R3-CV - Filed May 16, 2013**

The homeowners' association of a residential subdivision in Brentwood, Tennessee seeks just compensation from the City of Brentwood for loss of property rights in a portion of the subdivision's open space. The City acquired the property by purchasing it from the developers of the subdivision without the Association's knowledge. The Declaration of Protection Covenants, Conditions, and Restrictions of the subdivision, which the developers drafted and of which the City was on notice, states that the developers "will deed the completed Open Space on the subject Properties to the Association free and clear of any encumbrances before the first Lot is conveyed to a Lot Owner." Although they sold the first individual lot in 2001, the developers did not convey any of the open space to the homeowners' association until after the sale to the City. This action by the homeowners' association ensued. The trial court summarily dismissed the action on the City's motion, finding the homeowners' association did not own a compensable property right in the Open Space when it was sold to the City. We have determined the homeowner's association had an equitable interest in the Open Space pursuant to the Declaration of Protective Covenants, Conditions, and Restrictions when it was sold to the City; therefore, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Suzette Peyton, Brentwood, Tennessee, for the appellant, Willowmet Homeowners Association, Inc.

Teresa Reall Ricks, and E. Leith Marsh, Nashville, Tennessee, for the appellee, City of Brentwood, Tennessee.

**OPINION**

In 2000 and 2001, two land development entities, Centex Homes and Tiara Development, LLC ("the Developers," or individually by name), developed Willowmet, a residential subdivision located on Concord Road in Brentwood, Tennessee. The Developers recorded a Declaration of Protective Covenants, Conditions, and Restrictions for Willowmet ("the Declaration") with the Williamson County Register of Deeds office on August 24, 2001.

Pursuant to the Declaration, the Developers incorporated the Willowmet Homeowner's Association ("the Association") on December 19, 2001.[1] The Declaration also mandated that the Developers convey to the Association all of the Open Space of Willowmet prior to the sale of the first lot to a Lot Owner.[2] The first lot was conveyed to an individual lot owner on March 28, 2002; however, the Developers did not convey any of the Open Space to the Association until 2011.

In the interim, the City of Brentwood ("the City") informed the Developers that it planned to widen Concord Road, a public road along Willowmet, and that to do so the City needed to acquire a portion of the Open Space from each Developer. The title search conducted on behalf of the City prior to the purchase of the property revealed that the property was subject to the Declaration on file with the Williamson County Register of Deeds.

On October 12, 2010, Tiara Development executed a "Right-of-Way And Easement Conveyance" in favor of the City for a tract of land identified as "Tract 77," in exchange for

---

[1] Article III of the Declaration required the Developers to create a homeowner's association for the subdivision, in order to establish and provide for a system of maintenance, protection, and administration of the Open Space and facilities of Willowmet for the protection and preservation of the values, amenities, desirability, and attractiveness of Willowmet.

[2] "Lot Owner" is defined in the Declaration as "the record owner, whether one or more persons or entities, of the fee interest in any Lot which is part of Willowmet, excluding, however, those parties having such interest merely as a security interest for the performance of an obligation. Unless specifically provided otherwise herein, Developer shall be deemed a Lot Owner so long as it is the legal title holder of any Lot."

$3,675.00. On October 27, 2010, the successor-in-interest to Centex Homes, Pulte Home Corporation, executed a "Right-of-Way and Easement Conveyance," in favor of the City for a tract of land identified at "Tract 86," in exchange for $20,300.00.[3]

Both documents evidencing the conveyances state:

Grantor covenant [sic] that it is lawfully seized and possessed of the real estate described in the conveyance, and has a good and lawful right to convey the same, and that the title thereto is unencumbered, and Grantor will forever warrant and defend the same against the lawful claims of all persons whatsoever.

The City promptly recorded both deeds with the Williamson County Register of Deeds. Thereafter, the Developers conveyed the remaining Open Space to the Association by executing a series of quit-claim deeds in 2010 and 2011.[4]

On June 17, 2011, the Association filed this action in the Williamson County Circuit Court, asserting numerous claims against the City and seeking compensation for the Association's lost property rights in Tract 77 and Tract 86. The City is the only defendant; the Developers were not named as defendants.[5]

The Association asserts that it had an equitable interest in the Open Space prior to its conveyance to the City, that the City had actual and constructive notice of the Association's

---

[3]During oral argument before this Court, the City argued that it obtained both tracts in fee simple. However, the October 12, 2010 conveyance document provides that Tiara Development "does grant, transfer, and convey unto the City of Brentwood, . . . its successors, and assigns, certain property to be designated as [a] right-of-way for the purpose of installing a public road, together with necessary egress and ingress to accomplish the foregoing purpose, on over, across, and under [Tract 77]." The October 27, 2010 conveyance document provides that Centex Homes, "does grant, transfer and convey unto the City of Brentwood, . . . its successors and assigns, certain property to be designated as right-of-way for the purpose of installing a public road, together with necessary egress and ingress to accomplish the foregoing purpose, on, over, across, and under [Tract 86]."

[4]The successor-in-interest to Centex Homes, Pulte Home Corporation, executed quit claim deeds to the Association for its remaining interest in the Open Space on December 10, 2010 and January 6, 2011. Tiara Development executed a quit claim deed to the Association for its remaining interest in the Open Space on July 12, 2011.

[5]There is no indication in the record that the Association asserted any claims against the Developers in this or a separate action nor does the record explain why the Association has not sought relief from the Developers. At oral argument, counsel for the Association stated it was a strategic litigation choice to avoid the possibility of being held liable for the Developers' attorney's fees.

equitable interest in the property, and that the City's purchase of the property from the Developers constitutes a taking of the Association's equitable interest for which the Association is entitled to just compensation pursuant to the inverse condemnation statute, Tennessee Code Annotated § 29-16-123.[6] The Association does not seek ejectment or recovery of the property, only compensation for the value of its lost property interests.

The parties filed competing motions for summary judgment, which were argued before the trial court on April 9, 2012. The trial court determined that the inverse condemnation statute, Tennessee Code Annotated § 29-16-123, did not apply because the City obtained the property in question under color of title. The trial court further concluded that if the City's color of title did not bar the inverse condemnation statute, summary judgment was still proper as a matter of law because the Association did not own any compensable property rights in the Open Space conveyed to the City. The Association challenges these holdings, the denial of its motion for partial summary judgment, and the summary dismissal of its claims against the City.

## STANDARD OF REVIEW

Summary judgment does not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008). The appellate court makes a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). As does the trial court, the appellate court considers the evidence in the light most favorable to the nonmoving party and resolves all inferences in that party's favor. *Martin,* 271 S.W.3d at 84; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, the appellate court first determines whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 214-15 (Tenn.1993). If a factual dispute exists, the court then determines whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.* at 215.

---

[6]The Association also asserted claims of negligence and trespass, and sought just compensation under the Fifth and Fourteenth Amendments to the United States Constitution. The Association voluntarily dismissed the negligence claim in January 2012. On April 24, 2012, the trial court granted the City's motion to dismiss the trespass claim and the Association does not appeal that decision. The Association also voluntarily dismissed the federal claims after the City removed the case to federal court.

**ANALYSIS**

The Constitution of Tennessee states that no person's property shall be taken, or applied to public use, "without the consent of his representatives, or without just compensation being made therefore." Tenn. Const. art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain and the prohibition from taking property for public use without paying just compensation. *See Jackson v. Metro. Knoxville Airport Auth.*, 922 S.W.2d 860, 861 (Tenn. 1996). The procedure for the exercise of the governmental right of eminent domain and the rights of private citizens to challenge such government action are also codified. *See* Tenn. Code Ann. §§ 29-16-101 to 29-16-127; 29-17-101 to 29-17-1004.

## I. INVERSE CONDEMNATION

Inverse condemnation was explained by our Tennessee Supreme Court in *Edwards v. Hallsdale-Powell Utility District Knox County, Tennessee*, 115 S.W.3d 461 (Tenn. 2003), as follows:

> "Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings have been instituted. *See Johnson v. City of Greeneville*, 435 S.W.2d 476, 478 (Tenn. 1968). A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of the real property of another." *Pleasant View Util. Dist. v. Vradenburg*, 545 S.W.2d 733, 735 (Tenn. 1977).

*Edwards*, 115 S.W.3d at 464.

The Tennessee General Assembly codified a property owner's right of action for inverse condemnation at Tennessee Code Annotated § 29-16-123, which reads:

> (a) If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or the owner may sue for damages in the ordinary way, in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.

(b) Additionally, the court rendering a judgment for the plaintiff in a proceeding brought under subsection (a) . . . shall determine and award or allow to such plaintiff, as a part of such judgment or settlement such sum as will in the opinion of the court . . . reimburse such plaintiff for reasonable costs, disbursements and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

In any inverse condemnation action it is "incumbent upon the plaintiff to show that he is the owner of the land which has been taken for the purposes of internal improvement if the ownership is denied by the defendant." *Cox v. State*, 399 S.W.2d 776 (Tenn. 1965).

The Association insists it possessed a property interest in the Open Space when the Developers deeded the Open Space to the City in 2010 and that it did not consent to the conveyance to the City; thus, the City "took" the Association's property interest in the Open Space, and the Association is entitled to just compensation for the value of that property interest. The City contends that when it purchased the two tracts from the Developers, the Developers were the owners of record of the Open Space; therefore, the Association did not own a compensable property right in the two tracts and has no claim against the City.[7] The relevant facts are undisputed.

## II. DECLARATION OF PROTECTIVE COVENANTS, CONDITIONS, AND RESTRICTIONS

Because the Association's rights to the disputed property, if any, arise from the Declaration, we shall review the pertinent provisions in the Declaration.

The standard by which we interpret the Declaration is the same as any other written agreement. *Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 38-19 (Tenn. Ct. App. 1998) (citations omitted); *see also Gambrell v. Nivens*, 275 S.W.3d 429, 437 (Tenn. Ct. App. 2008) (stating that "our courts will enforce the covenants as they would contracts, according to the clearly expressed intention of the parties."). Therefore, we

---

[7]The City does not dispute that it "has taken possession of such land." Tenn. Code Ann. § 29-16-123(a). Moreover, the City does not raise the issue of whether the Association has instituted its claim for inverse condemnation "in accordance with the statutory provisions applicable to condemnation actions initiated by the taking authority." *See Meighan v. Sprint Comm. Co.*, 924 S.W.2d 632, 641 (Tenn. 1996) (holding that a claim for inverse condemnation under Tennessee Code Annotated § 29-16-123(a) "must be instituted in accordance with the statutory provisions applicable to condemnation actions initiated by the taking authority," namely Sections 29-14-104, "petition," and 29-14-105, "notice of petition").

look to the parties' intent as expressed in the Declaration. *Petty v. Sloan*, 227 S.W.2d 355, 360 (Tenn. 1955). If the Declaration is unambiguous as written, we will determine the parties' intention by the plan meaning of the Declaration. *Id.* at 358.

The relevant provisions of the Declaration provide:

WITNESSETH:

. . . .

WHEREAS, Developer desires to provide for the protection and preservation of the values, amenities, desirability and attractiveness of Willowmet; and

WHEREAS, Developer desires to establish and provide for a system of administration and continual operation and maintenance of certain Open Space of Willowmet hereinafter described; and

WHEREAS, Developer further desires to establish for Developer's benefit and for the mutual benefit and advantage of all future owners and/or occupants of Lots in Willowmet certain rights, easements, privileges, obligations, restrictions, covenants, liens, assessments and regulations governing the use and occupancy of and construction of buildings and other Improvements in Willowmet and the maintenance, protection and administration of the Open Space facilities thereof, . . . .

NOW, THEREFORE, Developer, as legal title holder of the Properties and for the purposes set forth above and further hereinafter set forth, declares as follows: . . .

In Article I, section 1.14. of the Declaration, Open Space is defined as follows:

"Open Space" shall mean and refer to all areas (including the improvements thereto) identified on the Platt as Open Space, including; Common Open Space No. 1 consisting of 5.28 acres; Common Open Space No. 2 consisting of 0.85 acres; any other areas lying within or adjacent to the roads and along the outer boundaries of the Properties, as designated by the Developer, which the Board [of the Association] determines to be in the best interest of the Association to

maintain and landscape; and such additional open space as may be annexed to the Properties and submitted to this Declaration pursuant to the provisions of Section 2.2 hereof.[8]

In Article VII, section 8.5, the Declaration states that the Developers "will deed the completed Open Space found on the subject Properties to the Association free and clear of encumbrances before the first Lot is conveyed to a Lot Owner. . ." and furthermore, that the Open Space "is to be owned by the Association and used in common by all Lot Owners."[9]

Pursuant to the foregoing, once the Declaration was recorded and the Association was incorporated, the Developers were under an affirmative, executory duty to deed the Open Space to the Association prior to selling the first individual lot. The Developers sold the first individual lot to a lot owner in March 2002 without first deeding the Open Space to the Association; thereafter, the Developers were in breach. *See Allman v. Allman*, No. M1997-00251-COA-R3-CV, 2000 WL 1728339, at *4 (Tenn. Ct. App. Nov. 22, 2000) (citing Restatement (Second) of Contracts § 235(1) (1981); 5A Arthur L. Corbin, *Corbin on Contracts* § 1230 (1964)) (stating that a contractual obligation is not discharged until the "executory contract has been fully performed").[10] *See Fuller v. McCallum & Robinson*, 118 S.W.2d 1028, 1037 (Tenn. Ct. App. 1938) (stating that a contract for the sale of property is "merely an executory contract").

The Developers failed to deed the Open Space to the Association; therefore, the executory duty was not discharged; to the contrary, the executory duty survived. Thus, it is

---

[8]Section 2.2 allows additional property to be annexed into Willowmet and subjected to the Declaration. The Developers recorded a "Supplementary Declaration for the Purpose of Annexation" for "Willowmet Phase II" on June 4, 2002, which added substantial property to the subdivision, including additional Open Space. The Developers also recorded a Supplementary Declaration for the Purpose of Annexation of Willowmet Section Three" on December 8, 2003, which further added to the residential area and Open Space.

[9]The term Properties, as defined in the Declaration, refers to all of the land within Willowmet except "public streets and roadways."

[10]"Executory" is defined as: "1. Taking full effect at a future time . . . . 2. To be performed at a future time; yet to be completed." *Black's Law Dictionary* (9th ed. 2009). "Executory covenant" is defined as: "A covenant that remains unperformed in whole or in part." *Id.* An "executory contract" is a "contract that remains wholly unperformed or for which there remains something still to be done on both sides, often as a component of a larger transaction and sometimes memorialized by an informal letter agreement, by a memorandum, or by oral agreement." *Id. See also* Steven Feldman, 21 Tenn. Prac. Contract Law and Practice § 1:5 (2012) ("An *executory* contract is a contract to do some future act. . . . [A] contract can be executed on one part's side and executory on the other.").

incumbent upon this Court to ascertain whether the executory duty, unfulfilled by the Developers and enforceable by the Association, gave rise to a compensable property interest in the Open Space acquired by the City.[11]

### III. EQUITABLE RIGHTS OF OWNERSHIP ARISING FROM EXECUTORY CONTRACTS

The general rule regarding equitable rights of ownership arising from executory contracts involving real property is stated in *Campbell v. Miller*, 562 S.W.2d 827, 832 (Tenn. Ct. App. 1977): "a contract for the sale of land operates as an equitable conversion and the vendee's interest under the contract becomes realty and the vendor's interest becomes personalty." The court in *Campbell* relied in part upon *Bates v. Dennis*, 203 S.W.2d 928 (Tenn. Ct. App. 1946). The dispute in *Bates* concerned the ownership of a piece of property, where Dennis died after entering into an agreement to purchase the property from Bates, but before Bates executed the deed in favor of Dennis. *Id.* at 929-30. Dennis's heir, his wife, filed suit to compel Bates to execute the deed. *Id.* at 928-98. The court ultimately determined the agreement between Dennis and Bates was unenforceable because the terms were too vague. *Id.* at 934. However, in arriving at this result, the court reasoned:

> If there was a valid executory contract between Bates and Dennis, for the purchase and sale of the property, then in the eyes of equity the ownership passed to Dennis even though no deed was executed. In that event Bates would hold the legal title upon a naked trust which would follow it into the hands of his heirs. In other words, the vendee's equitable estate avails against the vendor's heirs, and devisees. The applicable doctrine is to be found in the maxim that equity regards that done which ought to have been done.

*Id.* (citations omitted). Stated another way, if a purchaser of real property enters into a valid contract to purchase property from the owner of the property (the vendor), "an executory contract for the sale of the property operates as an equitable conversion, with the result that while legal title remains in the hands of the vendor, the purchaser is considered to be the equitable owner." *Rackley v. DeKalb Cnty. Fire Dept.*, No. M2000-00885-COA-R3-CV, 2000 WL 1586464, at *2 (Tenn. Ct. App. Oct. 25, 2000) (citing *Equitable Conversion*, 27A

---

[11]The City asserts the Association "sat on its rights" in the Open Space "for almost ten years" by failing to bring suit to compel the Developers to execute the deed prior to the sales to the City. However, the Developers are not a party to this action and have never claimed the Declaration is unenforceable. It is undisputed that since its incorporation, the Association has maintained and controlled the usage of the Open Space. Furthermore, immediately after selling Tracts 77 and 86 to the City, the Developers conveyed the remaining portions of the Open Space to the Association by quit-claim deed. Thus, the City's claim that the Association has no interest in the land because the Association failed to timely enforce its rights against the Developers is without merit.

A.L.R. § 13). Thus, the Association, as the "purchaser," held equitable title to the Open Space at the time the City purchased the property from the Developers.

In *Cheatham v. Carter County, Tennessee*, the court considered whether a purchaser of real property under an executory contract was entitled to compensation for its interest in real property. In *Cheatham*, Carter County instituted condemnation proceedings after the plaintiffs, William Cheatham and his business partners, entered into a contract for the purchase and sale of the property, but before the deed was executed. 363 F.2d 582, 583-84 (6th Cir. 1996) (applying Tennessee state law). The relevant facts in that case are as follows:

> On or about October 22, 1964, Crab Orchard Iron Company, a Tennessee corporation, was seized in fee simple in severalty of the land in question. On this same date, the Iron Company executed and delivered to the plaintiffs [William Cheatham and others] an option to purchase this land for a period of time at a price of $235,000. On November 19, 1964, the plaintiffs exercised their option to purchase and entered into a written agreement whereby the Iron Company agreed to sell and the plaintiffs agreed to buy the land in accordance with the terms of the option. Prior to the execution of this agreement, on or about November 9, 1964, the defendant [Carter County] acting through its [duly] authorized agent, the Quarterly County Court of Carter County, authorized and directed the institution of proceedings to condemn the land, for public park purposes, under defendant's power of eminent domain.

> On or about November 27, 1964, the defendant gave notice to the Iron Company of its intention to file a condemnation action in the Circuit Court of Carter County, against its interest in the lands. The petition was filed on or about December 4, 1964. The defendant was placed in possession of the land by order of the Circuit Court. At the time of the giving of the notice, of the filing of the petition and of the obtaining of the order of possession, the defendant, through its agent and attorney, had knowledge and notice that the plaintiffs, as they alleged, were the owners of the equitable interest in fee simple in the lands.

> The defendant did not set out, in its petition, the plaintiffs' alleged equitable interest or make them parties to the condemnation proceeding. The Iron Company, as the sole defendant in the action, appeared, disclaimed any interest in the land and asked to be dismissed. It also set up the plaintiffs' sole interest in the property. At the time the complaint was filed in the District Court, the Iron Company was the only party defendant to the condemnation

proceedings in the State Court. There were no actions pending in the State Court against the plaintiffs or their interests in the land in question. On or about January 25, 1965, the Iron Company executed and delivered its warranty deed to the plaintiffs for the land which is the subject of the condemnation action. The deed was recorded in the Registrar's Office for Carter County, in Deed Book 225 at page 93 on February 5, 1965.

The defendant, immediately upon the order of the court in the condemnation proceedings and through its authorized agent, the sheriff, took effective and actual possession of the land. The plaintiffs' representatives, when they went upon the land, were threatened with forcible ejectment by the defendant's agent. On April 15, 1965, plaintiffs' attorney made application to the defendant to make the plaintiffs parties to the State Court action. This request was refused.

*Id.* at 583-84. After Carter County refused to make Cheatham and his partners defendants in the condemnation proceedings in state court, Cheatham and his partners filed suit against Carter County in federal court. *Id.* at 584-85. In federal court, Cheatham and his partners relied upon Sections 23-1516 and -1522[12] of the Tennessee Code Annotated, which provided, respectively, that in condemnation actions by counties, "[a]ll parties having any interest or rights in such lands may be made defendants and proceedings shall only cover and affect the interest of those who are actually made parties," and, "[a]ny such person claiming any interest or any rights therein may file appropriate pleadings or intervention at any time before verdict or award, and be fully heard thereon." *Id.* at 584. Carter County again opposed naming Cheatham and his partners as party defendants to the condemnation proceedings pending in the state court.[13]

---

[12]These statutes are currently codified at Tennessee Code Annotated §§ 29-16-106 and 29-17-710.

[13]The Sixth Circuit Court expressed the following view of the trial tactics as follows:

This is sort of a cat and mouse game whereby the respective parties hope to gain an advantage in the choice of a forum for the determination of the amount of damages. Admittedly counsel for the defendant want this question determined by a jury in the State Court and counsel for the plaintiffs want a federal jury to decide the question. Counsel for the defendant do not want to make the plaintiffs parties for the reason that they might then remove the case to the Federal Court. Counsel for the plaintiffs do not want to intervene for the reason that they would be held to have chosen the State Court forum.

*Cheatham*, 363 F.2d at 584-85.

-11-

The issues in *Cheatham* relevant to this case are the nature of the plaintiffs' interest in the land based upon the executory contract for the purchase of the property from the Iron Company, and depending on the nature of that interest, whether Carter County was required to name the plaintiffs as additional defendants in the condemnation proceedings. *Id*. at 583. To resolve these issues, the Sixth Circuit Court conducted the following analysis:

> The plaintiffs, [Cheatham and his partners] *definitely have an interest in the land which is the subject of the condemnation action* and, in view of the disclaimer on the part of the Iron Company, it is the only outstanding interest in the land. As of the filing of this action, the defendant [Carter County] had brought no outstanding interest before the Circuit Court. Since, under Section 23-1516 Tenn. Code Ann., the condemnation proceedings cover only the interests of those who are made parties, no interests in the land were determined at the time this action was begun.

> The defendant relies on having brought in, as a defendant in the condemnation action, only the Iron Company, the record title holder. The defendant cannot be excused from naming, as defendants, the plaintiffs who held a substantial interest in the land, and whose interest under the assumed facts was known to the defendant and its attorneys and agents. It chose, so to speak, to bury its head in the sand, ostrich like, and ignore the real outstanding interest. The purpose of recording and registering deeds is to give the world constructive notice of transfers. One is still chargeable with the actual knowledge which one has.

> To name the plaintiffs as defendants in the condemnation action might result in removal of the case to the Federal Court, reason defendant's counsel. Well, so be it; if that is the right of the plaintiffs, it can't be denied by ignoring the facts.

*Id.* at 585 (emphasis added).

Likewise, in the case at bar, the Association *definitely* has an interest in the two tracts of Open Space the Developers conveyed to the City – the Association holds equitable title to the tracts, which was granted to the Association by the Developers in the Declaration. Moreover, when it purchased the property from the Developers, the City was on actual and constructive notice that the tracts were subject to the Declaration. Despite the City's insistence to the contrary, we find the Developers cannot unilaterally extinguish the Association's equitable title in these tracts by selling them to the City without the Association's knowledge or consent. Although the City has the authority to acquire property

for the purpose of widening public roads, it cannot "bury its head in the sand, ostrich like, and ignore the real outstanding interest," that is, it cannot acquire the property and use it to widen a public road without compensating the Association. *Id.* In other words, the Association's equitable title is a valuable property interest, for which it is entitled to just compensation under the inverse condemnation statute. Tenn. Code Ann. §29-16-123; *see also Town of Dandridge v. Patterson*, 827 S.W.2d 797, 800 (Tenn. Ct. App. 1991) (holding that an unexercised option to purchase, coupled with expenditures made in furtherance of the exercise of the option, created an "equitable interest" which "vests a valuable and compensable property right in the holder").

For the foregoing reasons, we have determined that the Association possessed compensable property rights in the Open Space acquired by the City.

## IV. COLOR OF TITLE

The trial court also found that the inverse condemnation statute, Tennessee Code Annotated § 29-16-123, did not apply because the City obtained Tracts 77 and 86 under color of title. *Cf. Cheatham*, 363 F.2d at 584 (Carter County instituted condemnation proceedings). In so finding, the trial court relied upon *Dickens v. Shelby County*, 157 S.W.2d 825 (Tenn. 1942). We have determined that the trial court's reliance on *Dickens* is misplaced because the plaintiff's claim in *Dickens* was for ejectment only, not compensation under inverse condemnation. *Id.* at 827.

The relevant facts in *Dickens* are as follows. The holder of a life estate in 1.37 acres conveyed the property to Shelby County, and Shelby County duly recorded the deed. *Id.* at 826. Although the life tenant only held a life estate in the property, the deed executed by the life tenant in favor of the County purported to convey the property in fee simple. *Id.* The County proceeded to construct and operate a school on the property. *Id.* Upon the death of the life-tenant, her heirs filed an action for ejectment in the Shelby County Chancery Court, "to recover possession of the land, together with rentals." *Id.* The Chancery Court dismissed the heirs' claim, and the Tennessee Supreme Court upheld the dismissal, finding: "In the instant case, we have a pure ejectment bill. . . . The bill seeks nothing more than the recovery of the land and mesne profits." *Id.* at 827.

*Dickens* stands for the proposition that the heirs could not seek an equitable remedy (ejectment), where an adequate remedy (just compensation) could be had at law. Moreover, the statutes providing for a legal remedy (the inverse condemnation statutes), had "no application" in an *ejectment* action. *See id.* at 826. The cases relied upon in *Dickens* support this conclusion. *See Campbell v. Lewisburg & N.R. Co.*, 26 S.W.2d 141, 145 (Tenn. 1930) (holding that where life-tenant executed a deed to a railroad company purporting to convey

the property in fee simple, heirs "cannot recover possession of the land, nor can they free it from an inconsistent adverse possession," and they "must be remitted to the recovery of such damages as constitute just compensation for their property taken"); *Saunders v. Memphis R. S. R. Co.*, 47 S.W. 155, 156 (Tenn. 1898) (holding that where railroad company "purchased the right of way here in question, . . . in good faith, . . . [a]t the most, the plaintiffs are entitled to compensation and damages only, and not to a recovery of the land").

We also find the trial court's reliance on the City's "color of title" is misplaced because the inverse condemnation statute, Tennessee Code Annotated § 29-16-123, says that "where the public service corporation is in possession the owner shall proceed in a certain way, and it says nothing about the methods by which the possession was acquired." *Rogers v. City of Knoxville*, 289 S.W.2d 868, 871 (Tenn. Ct. App. 1955). Therefore, the Association's claim for just compensation is not barred by the fact that the City purchased the property from the Developers.

V. The Association's Motion for Summary Judgment

The trial court denied the Association's motion for partial summary judgment on the issue of the City's liability under the inverse condemnation statute, Tennessee Code Annotated § 29-16-123, for taking the Association's property without compensation. We have determined the motion should have been granted as to liability, reserving for a subsequent hearing a determination of the value of the property taken by the City.

We have already determined, as a matter of law: 1) the Declaration conferred equitable title in the Open Space to the Association, a fact of which the City had actual knowledge prior to purchasing Tracts 77 and 86 from the Developers; 2) the Association's equitable title constitutes a compensable property interest, and 3) the City's actions in building a public road over Tracts 77 and 86 constitute a taking of the Association's equitable title for which it is entitled to compensation. Therefore, as a matter of law, the Association is the "owner" of a valuable, compensable interest in the property, and it is undisputed the City "has actually taken possession," of Tracts 77 and 86, "occupying it for the purposes of internal improvement," namely the widening of a public road. *Id.*; *see also Edwards*, 115 S.W.3d at 465 (citing *Ill Cent. R.R. Co. v. Moriarty*, 186 S.W. 1053 (Tenn. 1916) (*Barron v. City of Memphis*, 80 S.W. 832 (1904)) ("Physical occupation takings arise when a governmental defendant causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights.").

Accordingly, we reverse the decision to deny the Association's motion for partial summary judgment and remand with instructions to grant the Association's motion on the issue of the City's liability under the inverse condemnation statute, Tennessee Code Annotated § 29-16-123, and for a determination of the value of the property taken by the City.

**IN CONCLUSION**

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellee, City of Brentwood.

_____
FRANK G. CLEMENT, JR., JUDGE