IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 7, 2003 Session

# RAY D. EDWARDS, SR., ET AL. v. HALLSDALE-POWELL UTILITY DISTRICT KNOX COUNTY, TENNESSEE

**Appeal by Permission from the Court of Appeals
Circuit Court for Knox County
No. 3-104-00    Wheeler A. Rosenbalm, Judge**

---

**No. E2002-00395-SC-S09-CV - Filed August 27, 2003**

---

The plaintiffs brought suit against Hallsdale-Powell Utility District for nuisance and inverse condemnation after their homes were flooded with raw sewage on two occasions. The trial court granted partial summary judgment to the utility district on the plaintiffs' claim for inverse condemnation, holding that no taking of their properties had occurred. The Court of Appeals vacated the trial court's grant of partial summary judgment. The intermediate appellate court held that the plaintiffs had presented sufficient facts to overcome summary judgment by showing that the sewage backup into their homes had caused a permanent loss of market value. We hold that a governmental defendant must perform a purposeful or intentional act for a taking to exist. Because such an act was not shown in the present case, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Court of Appeals Reversed;
Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Dan D. Rhea and Samuel C. Doak, Knoxville, Tennessee, for the Defendant-Appellant, Hallsdale-Powell Utility District.

J. Myers Morton and George W. Morton, Jr., Knoxville, Tennessee, for the Plaintiffs-Appellees, Ray D. Edwards, Sr., Jewele C. Edwards, John F. Gazick, and Helene K. Gazick.

**OPINION**

**Factual and Procedural Background**

The plaintiffs are adjacent homeowners who live in Knox County, Tennessee. The defendant, Hallsdale-Powell Utility District ("HPUD"), is a publicly-owned, governmental utility district that provides water utility service and sewage disposal to the plaintiffs' neighborhood.

On two occasions, once on March 31, 1999, and again on December 19, 1999, the public sewer line that serves the plaintiffs' homes became clogged, causing a backup of raw sewage. The backup reached the lateral lines from the plaintiffs' homes. Sewage ran up the lines to plumbing fixtures located in the plaintiffs' basements and flooded the interior of the plaintiffs' homes.[1] HPUD cleaned the homes and repaired the damage to the homes after the first incident. HPUD also cleaned the homes after the second incident. However, no repairs were made to the homes because HPUD was not permitted to perform any further work.

On February 18, 2000, the plaintiffs filed suit against HPUD alleging nuisance under the Tennessee Governmental Tort Liability Act. In the alternative, they assert that they are entitled to compensation for a taking of their property under the inverse condemnation statute, Tennessee Code Annotated section 29-16-123.[2]

Both sides moved for summary judgment on the issue of inverse condemnation. The plaintiffs filed the affidavit of a real estate appraiser who opined that the sewage spills had reduced the market value of the plaintiffs' homes to zero. HPUD submitted affidavits to establish that the damage to the plaintiffs' homes could be repaired and that future incidents of sewage backflow could be prevented as part of the repair effort.

The trial court granted HPUD's motion for summary judgment and dismissed the plaintiffs' inverse condemnation claim, holding that no taking of their properties had occurred. The trial court granted the plaintiffs' motion for an interlocutory appeal.

---

[1] The plaintiffs have also reported incidents, occurring on August 15, 2000, and January 24, 2001, in which their homes were filled with the smell of raw sewage after HPUD cleaned the sewer line.

[2] The inverse condemnation statute states,

> (a) If, however, such [governmental defendant] has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest [as provided for in the eminent domain statutes] . . . or the owner may sue for damages in the ordinary way . . . .

Tenn. Code Ann. § 29-16-123 (2000).

The Court of Appeals granted review and vacated the trial court's grant of partial summary judgment.[3] The intermediate appellate court held that the plaintiffs had presented sufficient facts to overcome summary judgment by showing that the sewage backup into their homes had caused a permanent loss of market value.

We granted review.

## Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A ruling on a motion for summary judgment involves only questions of law and not disputed issues of fact. See Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc., 59 S.W.3d 63, 68 (Tenn. 2001). Accordingly, the standard for reviewing a grant of summary judgment is de novo with no presumption of correctness as to the trial court's findings. See Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the nonmoving party's favor. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000).

## Analysis

The Tennessee Constitution states that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain. The government is prohibited, however, from taking property for private purposes and must pay just compensation when property is taken for public use. See Jackson v. Metro. Knoxville Airport Auth., 922 S.W.2d 860, 861 (Tenn. 1996). The Tennessee General Assembly has implemented this provision by its passage of eminent domain and inverse condemnation statutes. See Tenn. Code Ann. §§ 29-16-101 to 29-16-127 (2000 & Supp. 2002); 29-17-101 to 29-17-1202 (2000).

"Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of

---

[3] While the case was on appeal, the plaintiffs, Mr. and Mrs. Edwards and Mr. and Mrs. Gazick, requested the Court of Appeals to consider post-judgment facts, alleging that a third event had occurred. On November 13, 2001, sewage from HPUD's sewer system allegedly overflowed into a ditch located on the property owned by the Gazicks. Although the sewage did not actually invade the property owned by the Edwards, the amended complaint asserts that the smell from the backflow affected the Edwards' property as well. The Court of Appeals found it unnecessary to rule on the plaintiffs' motion in light of its holding. We have reviewed the motion to consider post-judgment facts, and we conclude that it is not well taken. Rule 14(a) of the Tennessee Rules of Appellate Procedure allows appellate courts to consider facts that have not been established at trial when they are necessary to keep the record current. However, such facts must be unrelated to the merits and not genuinely disputed. Duncan v. Duncan, 672 S.W.2d 765, 768 (Tenn. 1984); Hall v. Bookout, 87 S.W.3d 80, 87 (Tenn. Ct. App. 2002). The post-judgment facts before us can hardly be characterized as "unrelated to the merits" or "not genuinely disputed." Therefore, the plaintiffs' motion is denied.

eminent domain have been instituted.  See Johnson v. City of Greeneville, 435 S.W.2d 476, 478 (Tenn. 1968).  A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of real property of another."  Pleasant View Util. Dist. v. Vradenburg, 545 S.W.2d 733, 735 (Tenn. 1977).  Not every destruction or injury to property caused by governmental action, however, constitutes a taking under article I, section 21 of the Tennessee Constitution.  See Jackson, 922 S.W.2d at 862 (citing PruneYard Shopping Ctr. v. Robins, 447 U.S. 74 (1980)).  Tennessee courts have recognized two classifications of takings:  physical occupation takings and nuisance-type takings.  See id. at 862-63.

Physical occupation takings arise when a governmental defendant causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights.  See generally Ill. Cent. R.R. Co. v. Moriarity, 186 S.W. 1053 (Tenn. 1916); Barron v. City of Memphis, 80 S.W. 832 (Tenn. 1904).  The construction of a permanent improvement by a governmental defendant that diverts water from a stream onto private property and causes flooding is an example of a direct and continuing physical invasion of real property.  See Barron, 80 S.W. at 832-33; see also Jackson, 922 S.W.2d at 862.  We have held that such direct and physical invasions constitute a governmental taking when real property is either actually appropriated or the common and necessary use of the property is rendered impossible or seriously interrupted.  See Barron, 80 S.W. at 832-33; see also Jackson, 922 S.W.2d at 862.  Physical occupation takings may also arise when a governmental defendant causes a destruction of a plaintiff's property rights.  The destruction of the easement of access to and from a plaintiff's home by the closing of a street is an example of a destruction of a property right.  See Moriarity, 186 S.W. at 1053-54; see also Jackson, 922 S.W.2d at 862.  This type of physical occupation constitutes a taking when there is a diminution in the value of real property peculiarly affected and directly invaded that is not shared by the public at large.  See Moriarity, 186 S.W. at 1054; see also Jackson, 922 S.W.2d at 862.

Tennessee courts also recognize nuisance-type takings.  See, e.g., Jackson, 922 S.W.2d at 862; Johnson, 435 S.W.2d at 480.  Such a taking occurs when the governmental defendant interferes with a landowner's beneficial use and enjoyment of the property.  See Jackson, 922 S.W.2d at 862; Johnson, 435 S.W.2d at 480.  For example, this Court has held that a government's extension of a runway that results in noise, vibration, and pollutants from airplanes flying at low altitudes to the detriment of nearby private property may be a taking.  Jackson, 922 S.W.2d at 861, 863-64.  In Jackson, we established the standard for determining whether a nuisance-type taking has occurred:  the plaintiff must allege a direct and substantial interference with the beneficial use and enjoyment of the property; this interference must be repeated and not just occasional; the interference must peculiarly affect the property in a manner different than the effect of the interference to the public at large; and the interference must result in a loss of market value.  Id. at 865.

The plaintiffs argue that their homes were physically invaded by raw sewage and that this case should be governed by cases such as Barron and Moriarity.  HPUD, on the other hand, argues that this Court should apply the Jackson test in the present case because sewage discharges have traditionally been regarded as "nuisances."

To constitute a taking under either line of cases, however, some action on the part of the governmental defendant is required. As we have held, a taking occurs when a governmental defendant with the power of eminent domain performs *"any action . . . which destroys, interrupts, or interferes with the common and necessary use of real property of another . . . ."* Vradenburg, 545 S.W.2d at 735 (emphasis added). In each of the cases in which this Court has found that a taking has occurred, the governmental defendant performed a purposeful or intentional act for the public good that resulted in damage to a plaintiff's property or property rights. In Johnson, the municipal airport constructed a runway. 435 S.W.2d at 477-78. Similarly, in Jackson, the governmental defendants extended a runway. 922 S.W.2d at 861. In both cases, the use of those runways gave rise to the plaintiffs' claims. See id.; Johnson, 435 S.W.2d at 477-78. In Moriarity, the city elevated railroad tracks, effectively closing a street. 186 S.W. at 1053. In Barron, the city's enlargement of a pier was the action that resulted in consequences to the landowner. 80 S.W. at 832; see also Vradenburg, 545 S.W.2d at 735 (involving the utility district's intentional, regular, and necessary discharge of water from its water treatment facility); Knox County v. Moncier, 455 S.W.2d 153, 154-55 (Tenn. 1970) (involving the county's construction of an interstate highway, which changed the natural drainage of the watershed area).

The parties point to, and we have found, only one Tennessee case that indicates that a purposeful or intentional act may not be necessary to the existence of a taking. See Betty v. Metro. Gov't of Nashville and Davidson County, 835 S.W.2d 1 (Tenn. Ct. App. 1992). In Betty, the plaintiffs sued the city for damage done to their dam as a result of the rupture of the city's sewage main, which they claimed was negligently operated and maintained. Id. at 4. The jury found that the plaintiffs had successfully proven a taking of their property, and the city appealed. See id. at 3. On appeal, the city asserted that the plaintiffs failed to make out a claim for inverse condemnation because they did not show that the damages were permanent or that they were caused by an intentional, affirmative act. See id. at 5. The Court of Appeals stated that "as long as a 'taking' has occurred, whether the taking was intentional, unintentional, or negligent is irrelevant." Id. at 7. However, the court's authority for this statement came exclusively from two California cases that construed the "damaging" clause of the California Constitution. See Holtz v. Superior Court, 475 P.2d 441, 444-45 (Cal. 1970); Marin v. City of San Rafael, 168 Cal. Rptr. 750, 752 (Cal. Ct. App. 1980). This clause requires compensation for "damaging" property as well as for "taking" property. See Cal. Const. art. I, § 19; see also Holtz, 475 P.2d at 444; Marin, 168 Cal. Rptr. at 752-53. Article I, section 21 of the Tennessee Constitution is limited to "property taken" and does not contain a "damaging" clause. See Jackson, 922 S.W.2d at 864 n.3. To determine that a governmental defendant may "negligently take" private property would be to read a "damaging" clause into the Tennessee Constitution. We decline to do so. We therefore hold that a governmental defendant must perform a purposeful or intentional act for a taking to exist. To the extent that Betty holds otherwise, it is overruled.

Case law from other states also supports the proposition that a governmental defendant must perform some purposeful or intentional action for a taking to exist. See Nat'l By-Products, Inc. v. City of Little Rock, 916 S.W.2d 745, 747 (Ark. 1996) (interpreting Article II, section 22 of the Arkansas Constitution to require an intentional act by the governmental defendant); Sullivant v. City of Oklahoma City, 940 P.2d 220, 225 (Okla. 1997) (requiring that the governmental act show an

intent to exercise the power of eminent domain or to take the property for a public use in order to constitute a taking); Vokoun v. City of Lake Oswego, 56 P.3d 396, 400-01, 402 (Or. 2002) (holding that a purposeful or intentional act is an element of an inverse condemnation claim); Lizza v. City of Uniontown, 28 A.2d 916, 918 (Pa. 1942) (stating that a claim for inverse condemnation can be made only if the plaintiff shows that the damages suffered were "the direct, immediate, necessary, and unavoidable consequences of the making of the improvement"); City of Abilene v. Smithwick, 721 S.W.2d 949, 951 (Tex. Ct. App. 1986) (stating that the governmental defendant must intentionally perform an act in order to give rise to a claim under Article I, section 17 of the Texas Constitution).

In the present case, the damage to the plaintiffs' property was not caused by a purposeful or intentional act of HPUD. In their claim for inverse condemnation, the plaintiffs allege that the "defendant has ruined and therefore taken their homes as a result of the sewage overflow." The plaintiffs do not allege, however, that HPUD performed any purposeful or intentional act that resulted in damage to their homes. The record shows that the sewer line became clogged. The backup was most likely caused by tree roots entering the line, not by any purposeful or intentional act on the part of HPUD. If the backup was caused by the failure of HPUD to meet its obligation to operate and maintain its sewer system as alleged, its failure would constitute negligence, not a taking.

The Court of Appeals' holding in this case suggests that permanent damage to real property is sufficient to constitute a taking in physical occupation cases. Because we hold that either type of taking requires a purposeful or intentional act on the part of the governmental defendant and because no such act has been alleged, we reverse the Court of Appeals' judgment, which vacated the trial court's grant of partial summary judgment to HPUD, and we remand the case to the trial court on the plaintiffs' remaining claims under the Governmental Tort Liability Act.

### Conclusion

We hold that in an inverse condemnation claim the plaintiffs must prove that the governmental defendant performed a purposeful or intentional act that resulted in damage to their real property to show that a taking has occurred. We also conclude that no genuine issues of material fact exist in this case, viewing the facts in a light most favorable to the nonmoving party. We therefore reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings in accordance with this opinion. Costs of this appeal are taxed to the plaintiffs-appellees, Ray D. Edwards, Sr., Jewele C. Edwards, John F. Gazick, and Helene K. Gazick, and their surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE