# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 28, 2011 Session

# RONALD AND SHERRY WINDROW
## v.
# MIDDLE TENNESSEE ELECTRIC MEMBERSHIP CORPORATION

**Appeal from the Circuit Court of Williamson County**
**No. 2010656      Jeffrey S. Bivins, Judge**

---

**No. M2011-00905-COA-R3-CV - Filed March 1, 2012**

---

This appeal involves a nuisance claim. The plaintiff landowners filed a nuisance action against the defendant electrical cooperative, alleging that the cooperative's electrical substation, built near the plaintiffs' home, constituted a nuisance. The electrical cooperative filed a motion to dismiss, alleging that the landowners' claim was in actuality a claim for inverse condemnation that was time-barred, and that they were precluded from asserting a tort claim for nuisance. The trial court granted the motion, and the plaintiff landowners now appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Robert A. Anderson, Nashville, Tennessee for Plaintiff/Appellants Ronald and Sherry Windrow

James C. Cope & Jeremy M. Cothern, Murfreesboro, Tennessee for Defendant/Appellee, Middle Tennessee Electric Membership Corporation

## OPINION

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellants Ronald and Sherry Windrow ("the Windrows") are the owners of a home located in Nolensville, Williamson County, Tennessee. Defendant/Appellee Middle Tennessee Electric Membership Corporation ("MTEMC") is a privately owned, non-profit corporation. In May 2005, MTEMC became the owner of a tract of land that is adjacent to the Windrows' home. In April 2007, MTEMC began constructing an electrical power substation on that tract of land. The substation was completed and began formal operations on February 27, 2008.

Since the electrical substation began operation, it has generated a "buzz" or "hum," audible in the Windrows' home, twenty-four hours a day, seven days a week.[1] The substation's intrusive bright lights are visible at all hours of twilight and darkness, seven days a week. MTEMC built no screening between the substation and the Windrows' property, and the substation is unsightly.

Over two years after the substation commenced operation, on December 20, 2010, the Windrows filed the instant lawsuit against MTEMC. The lawsuit claims that the substation constitutes a private nuisance, based on its vexatious sound, lights, and general unsightliness, and that it has damaged the private enjoyment of the Windrows' home and diminished the value of their property.

MTEMC responded with a motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. The motion contended that the Windrows' cause of action was either mislabeled or mischaracterized as a claim for nuisance, that in fact it was a claim for inverse condemnation. MTEMC noted that a one-year statute of limitations under Section 29-16-124,[2] is applicable to inverse condemnation actions, and thus any claim by the

---

[1] As we are reviewing the trial court's grant of a motion to dismiss, we assume for purposes of appeal the truth of the allegations in their complaint. ***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 426 (Tenn. 2011).

[2] Tenn. Code Ann. § 29-16-124 entitled "Limitation of owners' actions" provides as follows with respect to the statute of limitations governing inverse condemnation actions:

> The owners of land shall, in such cases, commence proceedings within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun; saving, however, to unknown owners and nonresidents, twelve (12)
>
> (continued...)

Windrows for inverse condemnation was time-barred. MTEMC asserted that inverse condemnation was the exclusive remedy available to the Windrows, and on this basis sought dismissal of their complaint. In response, the Windrows argued that inverse condemnation is not the exclusive remedy for a "nuisance-type" taking by a non-governmental entity such as MTEMC, because MTEMC cannot assert the doctrine of sovereign immunity as a defense.

After a hearing, the trial court entered an order granting MTEMC's motion, and dismissed the Windrows' complaint. The order does not specify the grounds for granting the motion. The Windrows now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Windrows argue that the trial court erred in dismissing their complaint. The Windrows note that their claim for nuisance is not time-barred, and argue that the law permits them to assert a claim against MTEMC, a privately owned entity, under a legal theory other than inverse condemnation.

In reviewing the grant of a motions to dismiss, under Rule 12.02)(6) of the Tennessee Rules of Civil Procedure, we construe the complaint liberally, presuming all factual allegations to be true and giving the Windrows the benefit of all reasonable inferences. *Trau-Med of Am., Inc. v. Allstate Ins., Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002) (citing *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996). We review the legal findings of the trial court's legal conclusions *de novo* without affording them any presumption of correctness. *Trau-Med*, 71 S.W.3d at 696 (citing *White v. Revco Disc. Drugs Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000)).

### ANALYSIS

On appeal, the Windrows acknowledge that they could have asserted a claim of inverse condemnation against MTEMC, a private entity, but insist that Tennessee law does not preclude them from filing a nuisance claim against MTEMC as well. In response, MTEMC cites a number of Tennessee cases which it contends show that, where a claim of inverse condemnation is available, no claim for nuisance may be asserted. Both parties cite Tennessee statutes and caselaw. We will briefly review the law on inverse condemnation, and then address the parties' arguments.

---

2(...continued)
months after actual knowledge of such occupation, not exceeding three (3) years, and saving to persons under the disabilities of infancy and unsoundness of mind, twelve (12) months after such disability is removed, but not exceeding ten (10) years.

The Tennessee Constitution provides that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor[e]." Tenn. Const. art. 1, § 21. This constitutional provision sets out the power of eminent domain, that is, the power of the government to take privately-owned property, in particular land, and convert it to public use, subject to reasonable compensation to the property owner for the taking. *Edwards v. Hallsdale-Powell Util. Dist.*, 115 S.W.3d 461, 464 (Tenn. 2003) (citing *Jackson v. Metro Knoxville Airport Auth.*, 922 S.W.2d 860, 861 (Tenn. 1996)); *see Black's Law Dictionary* 541 (7th ed. 1999) ("eminent domain"). Condemnation is the exercise of the power of eminent domain, that is, the act of assigning property to public use, subject to reasonable compensation. *Black's Law Dictionary* 287 (7th ed. 1999) ("inverse condemnation"). Inverse condemnation is an action by a property owner for compensation where there was a "taking" but no formal condemnation proceedings were filed. *Black's Law Dictionary* 287 (7th ed. 1999) ("inverse condemnation" under "condemnation"); *Edwards,* 115 S.W.3d at 464-65; *Jackson*, 922 S.W.2d at 861-62 (citing *Johnson v. City of Greeneville*, 435 S.W.2d 476, 478 (Tenn. 1968)). Thus, condemnation is initiated by the taking authority, while an inverse condemnation proceeding is initiated by the landowner. *B&B Ent. of Wilson County v. Lebanon*, 318 S.W.3d 839, 846 n.6 (Tenn. 2010).

The power of eminent domain is extended to certain private entities, such as railroad, telephone and electricity providers, by the authority of the legislature. *See* Tenn. Code Ann. § 65-25-205(12)(a)(C) (2004).[3] As such, a claim of inverse condemnation may be asserted

---

[3]Section 65-25-205 provides:

> With respect to a primary purpose, but without limiting the generality or particularity of subdivisions (a)(1)-(11): (C) Condemn either the fee or such other right, title, interest or easement in and to property as the board may deem necessary, and such property or interest in such property may be so acquired, whether or not the same is owned or held for public use by corporations, associations, cooperatives or persons having the power of eminent domain, or otherwise held or used for public purposes, and such power of condemnation may be exercised in the mode of procedure prescribed by title 29, chapter 16, or in the mode or method of procedure prescribed by any other applicable statutory provisions now in force or hereafter enacted for the exercise of the power of eminent domain . . . .

Tenn. Code Ann. § 65-25-205(12)(a)(C). Section 29-16-101 provides:

> Any person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law, or by the charter under which the person or corporation acts, in the manner and upon the terms herein provided.

(continued...)

against such a private entity. *See Meighan v. U.S. Sprint Commc'ns*, 924 S.W.2d 632 (Tenn. 1996); *Campbell v. Lewisburg N.R. Co.*, 26 S.W.2d 141, 146-47 (Tenn. 1930); *Doty v. Am. Telephone & Telegraph Co.*, 130 S.W. 1053, 1054-55 (Tenn. 1910); *Tenn. Elec. Power Co. v. J.T. Holt*, 3 Tenn. App. 372 (Tenn. Ct. App. 1926). It is undisputed on appeal that MTEMC, a private entity, has been granted the power of eminent domain and thus would be subject to a claim of inverse condemnation.

An entity with the power of eminent domain may in effect "take" property in ways other than a direct proceeding to condemn real property and convert it to public use. Such a "taking" occurs whenever an entity with the power of eminent domain "destroys, interrupts, or interferes with the common and necessary use of real property of another." *Edwards*, 115 S.W.3d at 465 (quoting *Pleasant View Util. Dist. v. Vradenburg*, 545 S.W.2d 733, 735 (Tenn. 1977)). There are "two classifications of takings: physical occupation takings and nuisance-type takings." *Edwards*, 115 S.W.3d at 465 (citing *Jackson*, 922 S.W.2d at 862-64). *See also B&B Enter. of Wilson Co.*, 318 S.W.3d at 845. A physical occupation taking occurs when an entity with the power of eminent domain "causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights." *Id.* at 465 (citations omitted). Such a physical invasion can occur where, for example, an entity with eminent domain authority diverts water onto private property, thereby causing continuing flooding. *Id.* (citations omitted).

The instant appeal does not involve a physical occupation taking, but instead involves the other classification of taking, a "nuisance-type taking." This type of taking occurs when the entity with eminent domain power "interferes with a landowner's beneficial use and enjoyment of the property." *Id.* (citations omitted). An example of a nuisance-type taking is a government's extension of an airport runway that results in noise and vibrations from airplanes flying at low altitude, to the detriment of nearby private property owners. *Jackson*, 922 S.W.2d at 861, 863-64.

A "nuisance-type taking" for purposes of inverse condemnation should be contrasted with the tort of private nuisance. A private nuisance is "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable . . . ." *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 364 (Tenn. 2002) (quoting *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981)).[4] A party asserting a claim

---

[3](...continued)
Tenn. Code Ann. § 29-16-101 (2000).

[4]A private nuisance is a "nontrespassory" invasion of another's interest in the use and enjoyment of his land.
(continued...)

of private nuisance may be entitled to several types of remedies, including injunctive relief, the cost of restoring property to its pre-nuisance condition, or damages for inconvenience, emotional distress, or injury to the use and enjoyment of the owner's property. *Lane*, 925 S.W.3d at 365. The tort of nuisance may be asserted against any person or entity, except where the doctrine of sovereign immunity bars such a claim against a governmental entity.

A "nuisance-type taking" overlaps with the tort of private nuisance in that a nuisance-type taking occurs where an entity with the power of eminent domain creates nuisance; the figurative "taking" of the property occurs through the creation of the nuisance. As with other types of inverse condemnation, the claim may be asserted only against an entity with the power of eminent domain, whether it be a private or a governmental entity, and the relief available to the claimant is more limited than the relief available for the tort of nuisance.

In this appeal, it is essentially undisputed that the Windrows could have asserted an inverse condemnation claim against MTEMC, based on a nuisance-type taking. For purposes of appeal, it is also undisputed that, by the time the Windrows' complaint was filed, any claim they may have had for inverse condemnation was barred by the applicable one-year statute of limitations. *See* Tenn. Code Ann.§ 29-16-124. The issue on appeal is whether, under Tennessee statutes and caselaw, the Windrows may assert only an inverse condemnation claim against MTEMC, or whether they may also assert a nuisance claim.

In Tennessee, actions by an aggrieved property owner for inverse condemnation are governed by statute. Tennessee Code Annotated § 29-16-123(a) provides:

> If, however, such person or company has actually taken possession of such land, occupying it for the purposes of internal improvement, the owner of such land may petition for a jury of inquest, in which case the same proceedings may be had, as near as may be, as hereinbefore provided; or the owner *may sue for damages in the ordinary way,* in which case the jury shall lay off the land by metes and bounds and assess the damages, as upon the trial of an appeal from the return of a jury of inquest.

Tenn. Code Ann. § 29-16-123(a) (2000) (emphasis added). This statute was interpreted by the Tennessee Supreme Court in *Meighan v. U. S. Sprint Communications Co.*, 924 S.W.2d 632 (Tenn. 1996). In *Meighan*, the plaintiff property owner filed a lawsuit against the defendant communications company based on the company's installation of cable on his

---

[4](...continued)
Restatement (Second) of Torts § 821D (Supp. 2011). In some instances, there may be some overlapping of claims for trespass and private nuisance. *Id.* at cmt. (e).

property without his consent and without compensation.[5]  *Id.* at 635.  The plaintiff asserted that the installation of the cable constituted a "taking" of his property as well as a trespass over his land.  *Id.*  The defendant company challenged the plaintiff's right to assert any claim other than inverse condemnation.  The company interpreted the language "may sue for damages in the ordinary way" as referring only to the method of commencing an action against the taking authority.  *Id.* at 640.  The plaintiff landowner asserted that the language indicated that a landowner could also sue the taking authority for trespass.  *Id.* at 640.

In considering the issue, the *Meighan* Court reviewed prior caselaw and found that it "made the existence of two separate remedies abundantly clear."  *Id.* (citing *Scott v. Roane Co.*, 478 S.W.2d 886, 887-88 (Tenn. 1972), and *Johnson v. Roane Co.*, 370 S.W.2d 496, 498 (Tenn. 1963)).  The *Meighan* Court quoted the holding in *Scott v. Roane County*, that Section 29-16-123(a) "should be read as allowing two distinct actions.  The first being an inverse or reverse condemnation action and the second being a suit for damages in the ordinary way."  *Meighan*, 924 S.W.2d at 640.  It rejected the defendant's argument, reaffirming "that a property owner whose property is taken by an authority exercising the power of eminent domain has two alternative causes of action," namely, an inverse condemnation action or "[a]lternatively, the property owner may sue for damages in a trespass action."  *Id.* at 640-41.

On appeal, as it did in the trial court, MTEMC contends that because the facts in the Windrows' complaint would have supported a claim for inverse condemnation by nuisance-type taking, the Windrows are limited to the sole and exclusive remedy of inverse condemnation and are prohibited from asserting a common law nuisance cause of action.  MTEMC acknowledges that, under *Meighan*, the Windrows could have asserted a cause of action for trespass had the facts supported such a claim.  It insists, however, that the Windrows may not assert a cause of action for private nuisance.  MTEMC cites six cases that it claims support this assertion:  *Edwards v. Hallsdale-Powell Utility Dist. Knox Co., Tennessee*, 155 S.W.3d 461 (Tenn. 2003); *Pleasant View Util. Dist. v. Vrandenburg*, 545 S.W.2d 733 (Tenn. 1977); *Monday v. Knox County*, 417 S.W.2d 536 (Tenn. 1967); *Large v. Greene County*, No. E2008-02764-COA-R3-CV, 2009 WL 5083482 (Tenn. Ct. App. Dec. 28, 2009); *Peterson v. Putnam County*, M2005-02222-COA-R3-CV, 2006 WL 3007516 (Tenn. Ct. App. Oct. 19, 2006); *Smith v. Maury County*, No. 01-A-01-9804-CH-00207, 1999 WL 675135 (Tenn. Ct. App. Sept. 1, 1999).

Respectfully, we disagree.  As detailed below, we find that none of the cases cited by MTEMC preclude a landowner with a nuisance-type inverse condemnation claim from

---

[5]The plaintiff in *Meighan* sought class certification, and much of the opinion addresses that issue.  *Meighan*, 924 S.W.2d at 635-40.

asserting, in the alternative, a claim of private nuisance against a non-governmental taking authority.

First, the cases cited by MTEMC involve governmental defendants that would generally enjoy the benefit of sovereign immunity and are subject to suit in tort only as permitted under Tennessee's Governmental Tort Liability Act. *See Edwards,* 115 S.W.3d at 463 (involving a "publicly-owed, governmental utility district" defendant); *Vradenburg*, 545 S.W.2d at 735 (defendant utility district vested with eminent domain powers sued for discharging water on plaintiff's land);[6] *Monday*, 417 S.W.2d at 537 (involving the construction of public roads by Knox County, "a public authority"); *Large*, 2009 WL 5083482, at *1 (involving the construction of a bridge by municipality Greene County); *Peterson*, 2006 WL 3007516 , at *1-2 (Putnam County as defendant ); *Smith*, 1999 WL 675135, at *2 (Maury County in the construction of public roads for county improvement).

The statute providing for a cause of action for inverse condemnation constitutes an exception to sovereign immunity as to governmental entities. *See Jones v. L&N R.R. Co.*, 617 S.W.2d 164, 170 (Tenn. Ct. App. 1981) (finding that the legislature provided an inverse condemnation cause of action as a reasonable exception to sovereign immunity for property owners, and therefore it would not be within the power of the courts to create additional methods of providing compensation, rendering inverse condemnation an exclusive remedy in this context).[7] Thus, to the extent that the cases cited by MTEMC circumscribe the remedies available against governmental defendants being sued under the inverse condemnation statute, this does not tell us whether similar limitations exist on the remedies

---

[6]*Pleasant View Util. Dist. v. Vradenburg* describes the defendant as "a utility district vested with eminent domain powers" pursuant to Tenn. Code Ann. §§ 6-2601– 6-2636, known as the Utility District Law of 1937, a predecessor of Tenn. Code Ann. § 7-82-101, *et seq*. Under the former Utility District Law of 1937, other cases interpreting the statutes cited in *Vradenburg* found that utility districts were considered "public, municipal corporation[s]." *See Rector v. Griffith*, 563 S.W.2d 899, 901 (Tenn. 1978) ("There can be no question that a utility district such as that involved here is a public, municipal corporation.") Additionally, Tenn. Code Ann. § 7-82-301(a)(1)(A) states that a utility district is a " 'municipality' or public corporation in perpetuity" and each utility district is run by a board of commissioners appointed by the county mayor and is not privately owned. Tenn. Code Ann. §§ 7-82-301(a)(1)(A); 7-82-307. Thus, we conclude that *Vradenburg* also involves a governmental entity.

[7] MTEMC claims that *Jones v. L&N R.R. Co.* stands for the proposition that a taking authority without sovereign immunity would be treated identically to a taking authority with sovereign immunity, so long as the defendant possesses the power of eminent domain. 617 S.W.2d 164, 169 (Tenn. Ct. App. 1981). We find that *Jones* does not stand for this proposition, but holds only that a municipality can assert sovereign immunity only so long as it is carrying on a governmental function. *Jones*, 617 S.W.2d at 166, 169.

available against a private entity such as MTEMC, which is not protected by sovereign immunity.[8]

We note that the Tennessee Supreme Court's decision in *Meighan v. U.S. Sprint Commc'n* holds clearly that inverse condemnation is *not* the exclusive remedy against a private entity with the power of eminent domain. In *Meighan*, the plaintiff was permitted to assert a trespass claim against the defendant communication company. *Meighan*, 924 S.W.2d at 640-41.

On appeal, MTEMC mounts an energetic effort to distinguish *Meighan* and explain why it should not be applied to permit the Windrows to assert a nuisance claim in this case. MTEMC argues at length that (1) *Meighan* involved a physical occupation taking, while the instant case involves a nuisance-type taking; and (2) the plaintiff in *Meighan* sought to assert a trespass claim, while the Windrows seek to assert a nuisance claim. MTEMC also argues the significance of whether the conduct by the taking authority was intentional or negligent. After carefully reviewing MTEMC's lengthy argument on these points, we find that they amount to distinctions without a difference. We see no basis for finding that the analysis in *Meighan* is inapplicable to the case at bar because *Meighan* involved physical trespass and the instant case involves nuisance, or the other distinctions on which MTEMC seeks to rely.

In the alternative, MTEMC argues that the Windrows "fail to offer a single case" in which a landowner was permitted to assert both an inverse condemnation claim and a nuisance claim against a private entity taking authority. Respectfully, MTEMC misunderstands where the risk of non-persuasion lies with respect to a motion to dismiss. MTEMC is the movant and has the burden of establishing that the Windrows cannot assert a nuisance claim. After carefully reviewing MTEMC's appellate brief and the cases cited therein, we find that MTEMC cites no Tennessee case holding that an aggrieved landowner is precluded from

---

[8]MTEMC argues that non-profit electric cooperatives, such as MTEMC, have been recognized as public service corporations and that property owners aggrieved by public service corporations are restricted to pursing only the available statutory remedies under inverse condemnation statute. We find that electric cooperatives such as MTEMC are distinguishable from public service corporations, as MTEMC is privately owned, operated, and used solely by its members; whereas public service corporations established under Tenn. Code Ann. § 7-82-101, *et seq.* are operated by a board selected by government officials solely for public use. After reviewing the cases cited by MTEMC, including *Buhl v. U.S. Sprint Commc'n. Co.*, No. 192, 1991 WL 16250, at *6 (Tenn. Ct. App. Feb. 12, 1991)(citing *Rogers v. City of Knoxville*, 289 S.W.2d 868, 870 (Tenn. Ct. App. 1955)(citing *Armstrong v. Ill. Cent. Ry. Co.,* 282 S.W. 382, 384 (Tenn. 1926); *Doty v. American Telephone & Telegraph Co.*, 130 S.W. 1053 (Tenn. 1910); and *Tenn. Coal, Iron & Rail Co. v. Paint Rock, Flume & Transp. Co.*, 160 S.W. 522, 523-24 (Tenn. 1913), we find that they do not support the proposition for which MTEMC cites them. Therefore, this argument is without merit.

asserting both an inverse condemnation claim and a nuisance claim against a non-governmental taking authority. Likewise, we have found no Tennessee case to that effect.

Under the reasoning in ***Meighan v. U.S. Sprint Commc'n***, we must conclude that the Windrows are not precluded from asserting a cause of action for private nuisance against MTEMC under the facts of this case. For this reason, we must reverse the trial court's order granting MTEMC's motion to dismiss.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Appellee Middle Tennessee Electric Membership Corporation, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE