# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on September 5, 2012

## MACK PHILLIPS, ET AL. V. MONTGOMERY COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVRM112535      Ross H. Hicks, Judge**

---

**No. M2012-00737-COA-R9-CV - Filed, June 28, 2013**

---

Property owners submitted a subdivision plat to the local planning commission for approval. The planning commission denied the proposed plan because the property lies in the path of a planned highway extension. The property owners filed a complaint alleging the planning commission's denial constitutes a regulatory taking that is prohibited by the Tennessee Constitution, Article I, Section 21, and, also, inverse condemnation that is compensable pursuant to Tenn. Code Ann. § 29-16-123. The trial court denied the government's motion to dismiss for failure to state a claim for which relief could be granted. We affirm the trial court's judgment as to the claim based on inverse condemnation, but reverse the judgment refusing to dismiss the regulatory taking claim.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed In Part and Reversed in Part**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Erik Fuqua, Austin Peay VII, Dan L. Nolan, Clarksville, Tennessee, for the appellants, Montgomery County, Tennessee and Clarksville Montgomery County Regional Planning Commission.

Stanley M. Ross; Steven T. Atkins, Clarksville, Tennessee, for the appellees, Mack Phillips and Leann Phillips.

**OPINION**

The Phillipses own approximately 15.6 acres in Montgomery County. They wanted to build a subdivision on their property and submitted a preliminary subdivision plat to the Planning Commission in accordance with the applicable zoning resolution and subdivision regulations. The Planning Commission denied the proposed plan because the property lies in the path of a planned future extension of State Highway 374.[1] The Phillipses also filed a complaint against Montgomery County and Clarksville Montgomery County Regional Planning Commission (together, "Montgomery County") in the circuit court, asserting claims for a regulatory taking under the Tennessee Constitution and for inverse condemnation pursuant to Tenn. Code Ann. § 29-16-123.[2]

Montgomery County filed a motion to dismiss under Rule 12.02(6) of the Tennessee Rules of Civil Procedure, asserting the Phillipses failed to state a claim upon which relief can be granted. The trial court denied Montgomery County's motion, thus allowing the Phillipses' action to proceed. The trial court stated at the hearing that although the courts in Tennessee have not yet recognized a cause of action for a regulatory taking, it believed Tennessee should recognize such a cause of action. This interlocutory appeal followed.

## I. STANDARD OF REVIEW

A Rule 12.02(6) motion challenges only the legal sufficiency of a complaint, not the strength of the evidence. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The resolution of a motion to dismiss for failure to state a claim for which relief can be granted is thus determined by an examination of the complaint alone. *Id*. (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010)). A motion to dismiss should be granted only if a plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Webb*, 346 S.W.3d at 426 (citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)).

A trial court ruling on a motion to dismiss must construe the complaint liberally, assuming the truth of all factual allegations and giving the plaintiff the benefit of all reasonable inferences. *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 1987) (citing

---

[1] Montgomery County does not contend, for purposes of this motion, that it denied the Phillipses' application for any reason other than the fact that the property lies in the path of a planned highway extension.

[2] The Phillipses also filed a writ of certiorari in the chancery court seeking judicial review of Montgomery County's denial of their site plan. That suit is not the subject of this appeal.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)). A defendant admits the truth of the material allegations contained in the complaint for purposes of the motion, but contends the allegations fail to establish a cause of action. *Webb*, 346 S.W.3d at 346 (citing *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). We review a trial court's legal conclusions regarding the adequacy of a complaint *de novo*, according the trial court no presumption of correctness. *Webb*, 346 S.W.3d at 426 (citing *Brown*, 328 S.W.3d at 855).

## II. REGULATORY TAKING

The Phillipses contend that the Planning Commission's denial of their proposed site plan constitutes a regulatory taking that is prohibited by Article I, Section 21 of the Tennessee Constitution. The trial court declined to dismiss this claim.

The United States Supreme Court has recognized that a regulatory taking occurs pursuant to the Fifth Amendment of the United States Constitution[3] when a regulation denies a property owner all economically beneficial or productive uses of his or her land. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992); *B & B Enterprises of Wilson County, LLC v. City of Lebanon*, 318 S.W.3d 839, 845 n.5 (Tenn. 2010) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922)) (describing federal jurisprudence on regulatory takings).

However, the Phillipses have not brought a claim under the United States Constitution, but, instead, base their claim solely on the Takings Clause of the Tennessee Constitution, TN. CONST. art. I, § 21.[4] The Tennessee Supreme Court has not yet applied the takings clause of the Tennessee Constitution to zoning or land use regulation. Particularly, as to regulatory takings, the Court has recently reiterated the position that Tennessee has not recognized a regulatory takings cause of action. After first discussing the federal jurisprudence on regulatory takings claims the Court distinguished the Tennessee approach to such claims:

---

[3]The Fifth Amendment to the United States Constitution guarantees that no person shall "be deprived of life, liberty, or property, without due process of law" and also provides, "nor shall private property be taken for public use, without just compensation." The second provision is called the Takings Clause, or sometimes the Just Compensation Clause, and it is predicated on the proposition that the government should pay for private property it has taken for its own use.

[4]The Taking Clause provides, "That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

However, this Court has not yet held that a regulatory takings claim can be asserted under Article I, Section 21 of the Tennessee Constitution. Currently, we have recognized only two types of takings claims - physical occupation takings claims and nuisance-type takings claims. *Edwards v. Hallsdale–Powell Util. Dist.*, 115 S.W.3d 461, 465 (Tenn. 2003); *Jackson v. Metro. Knoxville Airport Auth.*, 922 S.W.2d 860, 862 (Tenn. 1996). Regulatory takings do not fall into either of these categories. *Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2002–02582–COA–R3–CV, 2005 WL 1541860, at *12 (Tenn. Ct. App. June 30, 2005) (No Tenn. R. App. P. 11 app. filed). Because of its procedural posture, this case is not the proper vehicle for deciding the existence or scope of a regulatory takings claim under Article I, Section 21.

*B & B Enter. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d at 845-46. The Tennessee Supreme Court has not since recognized a regulatory takings claim based on the Tennessee Constitution.

Since the Supreme Court has declined to hold that a regulatory takings claim can be asserted based upon the Taking Clause of the Tennessee Constitution, we also decline to do so. The Supreme Court may change its holding, but we do not choose to anticipate that it will.

We are aware of our opinion in *Durrett Investment Co., LP v. City of Clarksville, TN*, 2013 WL 614411 (Tenn. Ct. App. Feb. 15, 2013), in which this court reversed a trial court's dismissal of a plaintiff's takings and inverse condemnation claims based on a moratorium on property development and construction due to the same proposed road construction that prompted the denial of the Phillips' proposed subdivision. 2013 WL 614411 at *7.

The plaintiff in *Durrett* alleged the moratorium on development constituted a regulatory taking and that the trial court erred when it dismissed the plaintiff's complaint for failure to state a claim. *Durrett*, 2013 WL 614411 at *4. We reversed, stating that under the Rule 12 standards, the factual allegations in the complaint were "sufficient to be analyzed under the standards set forth in *Penn Central* to determine whether the moratorium established in the ordinance constituted a regulatory taking of Plaintiff's property." *Id*. at *6.

-4-

However, the plaintiff in *Durrett* based his regulatory takings claim on the United States Constitution and the decisions by federal courts on the subject.[5] Herein, the only regulatory takings claim is based upon the Tennessee Constitution.

Accordingly, the Phillipses failed to state a claim for a regulatory taking upon which relief can be granted, and Montgomery County's motion to dismiss should have been granted as to that claim.

### III. INVERSE CONDEMNATION

The Tennessee Supreme Court has explained that Article I, § 21 of the Tennessee Constitution recognizes the government's right of eminent domain but requires compensation when private property is taken for public use. *Edwards v. Hallsdale-Powell Util. Dist. Knox Cnty., Tenn.*, 115 S.W.3d 461, 464 (Tenn. 2003). The General Assembly has implemented this provision by enacting corresponding eminent domain and inverse condemnation statutes. *See* Tenn. Code Ann. §§ 29-16-101 *et seq.* The *Edwards* Court described inverse condemnation as follows:

> "Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of eminent domain have been instituted. *See Johnson v. City of Greeneville*, 435 S.W.2d 476, 478 (Tenn. 1968).

*Edwards*, 115 S.W.3d at 464-65.

Thus, one of the requirements for an inverse condemnation claim is a taking for public use. A property owner's right of action for inverse condemnation is set out in Tennessee Code Annotated § 29–16–123, which by its terms applies in situations where an entity "has actually taken possession" of the owner's land. The meaning of "taking" in the context of an inverse condemnation action has been discussed in several cases.

---

[5]The federal case law on regulatory takings is somewhat complex. However, where the issue involves interim zoning or building moratoria, some general principles have evolved. The following do not constitute a regulatory taking: (1) a moratorium that leaves an owner a reasonable use of his land and (2) moratoria that temporarily deny an owner all reasonable uses of land when it is reasonably limited as to time and furthers a significant public purpose. 1 Rathkopf's The Law of Zoning and Planning § 13.17 (4th ed.). Thus, even if we held that a regulatory takings claim can be brought under the Tennessee Constitution, it is not clear that the Phillips can establish the elements necessary to such a claim.

A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of real property of another." *Pleasant View Util. Dist. v. Vradenburg*, 545 S.W.2d 733, 735 (Tenn. 1977).

*Edwards*, 115 S.W.3d at 465.

Tennessee courts have generally recognized "two classifications of takings: physical occupation takings and nuisance-type takings." *Edwards*, 115 S.W.3d at 465 (citing *Jackson v. Metro. Knoxville Airport Auth.*, 922 S.W.2d 860, 862–63 (Tenn. 1996)); *see also B & B Enter. of Wilson Cnty. v. City of Lebanon*, 318 S.W.3d at 845.[6] A "nuisance-type taking" occurs when the entity with eminent domain power "interferes with a landowner's beneficial use and enjoyment of the property." *Edwards*, 115 S.W.3d at 465. One example of this type of taking is an extension of an airport runway that results in noise and vibrations to the detriment of nearby private property owners. *Jackson*, 922 S.W.2d at 861, 863–64. In a "nuisance-type taking," the figurative "taking" of the property occurs through the creation of a nuisance by an entity with the power of eminent domain.

In addition, other facts have been found significant. "Only when the injury is permanent in nature can there be a 'taking' within the contemplation of the statute . . . ." *Knox Cnty. v. Moncier*, 455 S.W.2d 153, 156 (Tenn. 1970). One indication that the injury is permanent and therefore a taking is damage to the market value of the property. *Jackson*, 922 S.W.2d at 865. As a general rule, statements such as these have been made in the context of distinguishing between an inverse condemnation action and an action for nuisance. The permanency requirement has not always been applied in an obviously consistent way. For example, in *Peterson v. Putnam County*, 2006 WL 3007516 (Tenn. Ct. App. Oct. 19, 2006), this Court discussed two cases addressing the distinction in the two causes of action:

The first issue with respect to the plaintiffs' common law nuisance claim - *i.e.*, whether the plaintiffs' proper cause of action was a claim for inverse condemnation, rather than a temporary nuisance claim - has been addressed by the courts of this State on numerous occasions. . . . Where the adverse effect

---

[6]A physical occupation taking occurs when an entity with the power of eminent domain "causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights." *Edwards*, 115 S.W.3d at 465. An example includes the situation where an entity with eminent domain authority, while performing work on a public project, diverts water onto private property and causes continuing flooding. *Id.*

amounts to a "taking" of property by the government, the plaintiff's proper remedy is one for inverse condemnation under the eminent domain statute. *See* T.C.A. § 29-16-123, 124; *see Pleasant view Util. Dist. v. Vrandenburg*, 545 S.W.2d 733 (Tenn. 1977); *Monday v. Knox County*, 220 Tenn. 313, 417 S.W.2d 536 (Tenn. 1967); *Smith v. Maury County*, 1999 WL 675135 (Tenn. Ct. App. Sept. 1, 1999).

In the case of *Monday v. Knox County*, the plaintiff filed a common law nuisance action against the county, alleging that the county's construction of a nearby highway had caused excessive amounts of water to collect on the plaintiff's property. 417 S.W.2d at 536. Th plaintiff sought a mandatory injunction. *Id. The trial court dismissed the plaintiffs' suit, holding that the plaintiffs' allegations amounted to a "taking" by the county and that the exclusive remedy was a claim under the eminent domain statutes. Id.* The Supreme Court affirmed, stating that "there has been a taking of [the plaintiff's] property for public use for which the remedy is reverse condemnation proceedings and [the county] would not be liable on the theory of a nuisance." *Id*. 537. Notably, the plaintiff argued that the intrusion only amounted to a temporary nuisance because the condition causing the damages could be remedied by certain changes in the construction of the highway. *Id.* The Court rejected this argument by stating that "the Court has no authority to order such change in construction; for to do so would in effect be constructing public roads by judicial order." *Id*.

Similarly, in *Pleasant View Util. Dist. v. Vrandenburg*, the plaintiffs filed an action to enjoin a utility district from discharging thousands of gallons of waste water on their property. 545 S.W.2d at 734. The utility district moved to dismiss the plaintiffs' suit, primarily arguing that its actions amounted to a "taking," rather than a nuisance. *Id*. The utility district asserted that the plaintiffs' proper remedy was an action for inverse condemnation, and furthermore, that any inverse condemnation action was now barred by the one-year statute of limitations for such actions. *Id*. at 734–35. *The trial court granted the utility district's motion to dismiss. Id*. at 735. As noted by the Supreme Court, the Court of Appeals reversed and remanded, concluding that the plaintiffs' suit was " 'not a suit for damages in reverse condemnation [but] is primarily an injunction suit praying for injunctive and general relief.' " *Id*. (bracketing in original). The Supreme Court reversed the Court of Appeals and affirmed the trial court's judgment. *Id*. at 736 . . . .

*Peterson v. Putnam County*, 2006 WL 3007516, at *9 (emphasis in original).

Turning now to the case before us, we consider the facts the Phillipses alleged in their complaint to determine whether they state a claim for inverse condemnation. The relevant and material facts alleged include:

5. Prior to October 2010, the Plaintiffs submitted an application for subdivision review for the purposes of obtaining approval of the preliminary plat for the property pursuant to the zoning resolution of the subdivision regulations.

. . . . .

9. Upon information and belief, no members of the community appeared or petitioned the Respondent for disapproval of the plat.

10. Following the presentation, the Defendant, **PLANNING COMMISSION** denied Plaintiffs' application for approval of the preliminary plat . . . .

11. Upon information and belief the findings of the Defendant, **PLANNING COMMISSION** were based on the possible use of the property for a future highway right of way, but has no current plans to begin construction or condemnation proceedings for the future extension of highway 374.

12. By virtue of denying **PLAINTIFF**'s site plan, the **PLANNING COMMISSION** acting on behalf of **MONTGOMERY COUNTY** interfered with the common and necessary use of **PLAINTIFF**'s real property, which was specifically allowed pursuant to the applicable zoning ordinance. **DEFENDANTS**' denial of the requested plan despite its compliance with the applicable zoning ordinances constitutes such a burdensome restriction on the use of the **PROPERTY** that **DEFENDANTS** have for all intents and purposes taken the **PROPERTY** and must compensate **PLAINTIFFS** therefor pursuant to Tenn. Con. Art. I, § 21.

13. Plaintiffs are entitled to recover the reasonable value of the land and damage thereto pursuant to Tennessee Code Annotated § 29-16-123.

The facts are sufficient to state a claim for inverse condemnation so as to survive a

Rule 12.02 motion to dismiss. It is early in this litigation, and no discovery has been had. The motion was decided on the basis of the complaint only, and the position of Montgomery County has not been considered. We do not intend to indicate whether this lawsuit may or may not survive a later dispositive motion after additional facts are established.

We affirm the trial court's judgment denying Montgomery County's motion to dismiss on the inverse condemnation claim.

### III. Conclusion

We affirm the trial court's judgment denying Montgomery County's Rule 12.02(6) motion to dismiss the inverse condemnation claim and reverse the denial of dismissal of the regulator takings claim. The case is remanded to the trial court for further proceedings. Costs of this appeal are assessed one-half to the appellants, Montgomery County, Tennessee, and the Clarksville Montgomery County Regional Planning Commission, and one-half to the appellees, Mack and Leann Phillips.

_____
PATRICIA J. COTTRELL, JUDGE